## James Vanhook v. The State.

Objections to the manner of constituting the grand jury must, in general, be taken by challenge, either to the array or to the polls ; but objections to the competency of individual jurors may be pleaded in abatement. If the objection be to individual jurors, as that their names were not in the jury book, it is cause of challenge at the polls, but if the objection be to the whole panel, it should be taken by challenge to the array. The case of The State v. Jacobs, 6 Tex. R. 99, not inconsistent with this case.

Appeal from Harrison. To an indictment for gaming, the defendant pleaded in abatement, that the grand jury who found the indictment, were not a legally constituted grand jury ; for that the jury list from which they were drawn, was made more than one year before the drawing took place ; and that it was not revised within the year next before the drawing ; that there was no order of the County Court, appearing upon its minutes, directing the jury list to be made, or ratifying it ; that there were certain named persons, qualified jurors at the time of the drawing, whose names had not been entered on the list ; and that the names of William A. Tuttle and James B. Franklin, two of the persons who served as grand jurors, were not on the jury list, made by the County Court.

The District Attorney excepted to the sufficiency of the plea, in that there was no averment that the jurors who found the indictment were not good and lawful men, possessing the requisite legal qualifications to serve as grand jurors ; or that their names were not entered in the jury book ; or that there was any illegality or irregularity in selecting or impannelling the grand jury ; or that the names of Tuttle and Franklin were not placed in and drawn from box No. 1, as directed by law ; or that they were not good and lawful grand jurors. And he made a part of his exception the *venire facias*, the record of the impannelling of the grand jury, and the entries

upon the jury book. He also traversed and avoided the aver-
ments of the plea generally and specially. The Court sus-
tained the exception to the plea. The defendant was con-
victed and appealed; and assigned as error the judgment of
the Court sustaining the exceptions to his plea in abatement.

*Wigfall & Hyde*, for appellant. The objections to the in-
dictment, in this case, on the alleged illegality of the organi-
zation of the grand jury, were well taken, and ought to have
been sustained. The statute provides a certain manner of
procuring juries, and its requisitions must be complied with.
This is thought to be obvious from the following consider-
ations, independent of authority.

Sovereignty, the supreme, ultimate power from whence all
authority is derived, resides, in our country, in the people.
Finding it inconvenient, if not impossible, to exercise their
sovereign powers directly, they have constituted agents for
this purpose. These agents together constitute one agency—
called the Government. The Government then exercises all
the sovereign powers of the people; but it inherently possesses
none. The authority for exercising these sovereign powers is
evinced by the constitution. A constitution is a letter of at-
torney from the sovereign (in this country, the people) to its
agent—the Government. The term " people " has different
significations. It sometimes means the whole body of inhab-
itants, in their aggregate corporate capacity. It then means
the State, and, in that sense, the people are properly called
sovereign, for all power resides in them or is derived from
them.

As individuals, the people are subjects and owe allegiance
to the State. In their aggregate corporate capacity, they hold
in their hand the power of life and death, and, through their
authorized agent, the Government, can and do punish treasons
against themselves, felonies, misdemeanors, provide for the
descent of property, adjudicate claims, pass laws, appoint ju-

dicial tribunals, and those who shall execute their decisions. As individuals, they are amenable to the laws, and can be deprived of life, liberty, and property, by their own tribunals, when they violate those laws which they, in their aggregate corporate capacity, have passed, through their regularly constituted agent—the Government. The Judge upon the bench, as agent of the people, can condemn to death the criminal before him. As one of the people he may, himself, be condemned to death, and be led to execution by the officer who but the day before executed upon others the sentences which he passed.

Where then any number of the people against, or without express authority of law, attempt to administer justice—their acts, however just in themselves, are null and void, and they themselves become criminal. By appointing agents to exercise their powers, the people have prohibited to themselves individually, the right to exercise any of them. It is true they have not divested themselves of any of their inherent sovereign powers, and that they may, at any time, revoke any or all of them, which they have vested in any of their agents. But, whilst they remain unrevoked, the people of this State are subjects of the State, owe it allegiance, are bound by its laws, and are as incapable, individually, of making, construing, or enforcing the laws as are the Serfs of Russia. These matters have all to be done by the Government. For this reason a Bill of Rights was adopted. It is the "Great Charter" of our liberty. It secures us, as citizens and subjects, from being "deprived of life, liberty or property, except by due course of the law of the land." (B. of R. Sec. 16.) Agents are appointed as well for construing and enforcing the laws, as for making them. They form a part of the regular machinery of the Government. Through them only, when regularly and legally appointed, can the laws be enforced. The Government, legally, is as incapable of adopting and enforcing the unauthorized action of its citizens, as they are of taking that action.

The State Government is divided into three departments,

the legislative, judicial, and executive. It will be necessary to consider only one of these—the judicial. This again is subdivided, and it will be necessary to consider but one of the subdivisions—the District Court. This is composed of a Judge, a grand and petty jury, and officers of the Court. It is the duty of the grand jury to ascertain what offences have been committed, and present those, in their opinion, guilty of these offences, for trial. The District Attorney prosecutes the supposed offenders. The Judge charges the law, and the petty jury decide upon the guilt or innocence of the prisoner. All this is done by the authority of the State—the people in their aggregate sovereign capacity.

The Constitution vests in the Legislature the power to organize the District Court. In pursuance of this authority, the Legislature has declared who may be elected officers of the Court, the manner of their election, and the evidence of it. The same as to jurors. The County Court has first to decide who are eligible. It must then elect from those who are found to be eligible and furnish the District Court the evidence of their election. In this law nothing can be considered as merely directory. What is a jury? It is one of the constituent parts of the District Court, composed of a certain number of men, who have in the manner and at the time, prescribed by law, been declared, by the County Court, eligible to the office of jurors—who, having been so declared eligible, have, in the manner, and at the time, prescribed by law, been duly elected jurors by the County Court, and who being so elected, have been, in the manner, and at the time, prescribed by law, regularly certified to the District Court, by the County Court, as duly elected jurors.

Which of these pre-requisites can be dispensed with? What gives to the jury their authority to present offenders for trial, or to pass the judgment of death upon their equals? The law. But that law which vests in them this high and fearful authority, deciding upon life and death, prescribes, in detail, the manner in which they shall be organized. They wield

sovereign power, represent the State, and are a part of the Government. Shall we not then be permitted to ask them for their commission ? Before such organization they are simply subjects and citizens. Subjects and citizens they again become when the brief period during which they are clothed with this terrible power shall have passed away and been determined. If the law does not give them this power, then I know not whence it is derived. But to whom does the law give this great power ? To a jury. But what is a jury ? A certain number of men, possessing certain qualifications, and selected as the law directs. Can they be selected otherwise ? Twelve men may, certainly ; but as certainly as they are, they will not be a jury. *Expressio unius. est exclusio alterius.* There is no magic in the number of twelve, Sir Edward Coke's quaint conceit about its being patriarchal and apostolical, to the contrary notwithstanding.

The violation of the right of trial by jury was one of the causes which led to the American Revolution. It was one of the rights which were wrung from royalty at Runnemede. Magna Charta declares that no one shall be hurt either in person or property *nisi per legale judicium parium suorum vel per legem terræ.* I trust I may be permitted criticism upon the structure of this sentence, without being suspected of pedantry. The articles *a* and *the* were unknown to the Roman language. They emphasized words; therefore, by the position in which they placed them in a sentence. The emphatic word was placed before the word which it qualified, or by which it was qualified. Now observe the structure of this sentence : *Legale judicium,* the lawful judgment—*parium suorum,* of their peers—*legem terræ,* the law of the land. Latin at that day was the Court language. The author of "the Great Charter" wrote and spoke it with the ease and accuracy that we do English. The words of that clause were not "huddled together with impossible confusion ;" but each was well weighed and its meaning carefully canvassed and cautiously considered. A trial by jury did not satisfy the haughty, steel-

clad Barons, who, with arms in their hands, were seeking indemnity for the past and security for the future. A lawful trial was what they demanded, and what they obtained. Can we be content with less?

The people of this State, when about to pass the right of exercising the sovereign powers which they possessed, from their hands, into those of their agents, threw around those powers, safeguards and checks, greater than were ever dreamed of even in England. There the jurors shall be *omni exceptione majores;* but the Judge may be interested. (Co. Litt. p. 294.) Not so here. (Hart. Dig. Art. IV, Const. Sec. 14, p. 63.) There one may be tried for a capital felony without the intervention of grand jury. (2 Hale, 61; 3 Camp. 361; 2 Leach, 1095; Russell & Ryan, 240.) In the latter case a woman was tried for murder after the grand jury had refused to find "a true bill," and this as late as 1812. There a party may be put upon his trial without any written accusation. It is common to prosecute upon the verdict of a petty jury in a civil case. (2 Hale, 150–1; 4 Term R. 293; 3 Esp. 134; Hawk, B. 2 C., p. 15, Sec. 6; Com. Dig. Indict. C.; Bac. Ab. Indict. B; 5 Term R. 293.) One may even be prosecuted upon an affidavit taken at a trial at *nisi prius.* (4 Term R. 285.) Here no one can be put in peril of his life but by the finding of a grand jury. (Hart. Dig. Art. 488.) In a country, then, where life and liberty are so much more strictly guarded by law, should our Courts not be proportionably strict in construing that law? We, however, ask no more than is secured to every British subject; not only a fair, but a legal trial. Is this asking too much? "No citizen of this State shall be de-"prived of life, liberty, property or privileges, outlawed, exil-"ed or in any manner disfranchised, except by due course of the "law of the land." (Bill of Rights, Sec. 16, Hart. Dig. p. 53.)

The question is not whether the men who found this bill were *liberi et legales homines*—house-holders or free-holders living in the county; but whether they were duly declared eligible, whether they were duly elected, and whether they were

duly returned to the District Court as elected jurors. Unless these things were done they were but private citizens, formed no part of the Court, and had no authority to exercise any of the sovereign powers of the State.

According to the ancient laws of England, the jury had to be summoned *de vicineto*, and, therefore, some had to be summoned from the hundred in which the *vill* lay. If none were returned, the array might be challenged for defect of hundredors. (Co. Litt. 156.) Yet there might have been on such a jury no single juror, who was objectionable *propter honoris respectum*, *propter defectum*, *proper affectum or proper delictum*. Why then quash the array ? The trial would be fair. The array must be quashed because, as a British subject, he was entitled by " the Great Charter" to a *legale judicium*, as we are by our Bill of Rights.

The objections to the jury were :

1st. That the list, from which it was drawn, had not been revised according to law.

2nd. That there was no entry in the minutes of the County Court, showing that said list had been prepared by them.

3rd. That there was no entry upon the minutes of said County Court, showing that they had caused said list to be entered in the jury book.

4th. That the names of Wm. A. Tutle and James B. Franklin, two of the persons who served on said grand jury, were not found entered upon said jury list.

As to 1st objection, see Hart. Dig. Art. 1642, p. 510. As to 2nd and 3rd objections, see Hart. Dig. Art. 1641, p. 509. As to 4th objection, The State v. Jacobs, 6 Tex. R. 99.

The County Court in regard to the discharge of its duties in selecting a jury, must be considered a judicial tribunal. " They shall prepare a list of such persons, &c., as they shall "juge well qualified to serve as jurors." (Hart Dig. Art. 1641.)

Is the County Court a Court of Record ? It can inflict fines for contempt of Court. (Hart. Dig. Art. 315.) This would

constitute a Court of Record. (3 Black. Com. 25 ; 5 Blackf. 326.) It is required to keep a seal for the authentication of all official acts. (Hart. Dig. Art. 313.) Suitable books are required to be procured and kept in the County Clerk's office, in which it is made the duty of the Clerk to record all the proceedings of each Term of said Court, which record shall be read over and be signed by the Chief Justice or the member of the Court presiding at the end of each Term. (Hart. Dig. Art. 316.) It is therefore a Court of Record. (The State v. Conner and others, 5 Blackf. 326.)

Being a Court of Record, how can its acts and proceedings be shown ? " Only by the Record." (5 Blackf. 327.) The record not showing that any list was ever prepared, or caused to be entered in the jury book, or revised and amended, as required by law, was fatal to the indictment, and the plea in abatement should have been sustained. (5 Blackf. 325-6-7.) But the rule should be more stringently enforced here than in Indiana, because by our statute it is made the special duty of the Clerk " to record all the proceedings of each Term of the Court." He must be presumed to have done his duty. For the doctrine, that the statute must be strictly pursued, see also Mitchell v. Likens, 3 Blackf. 258; Wright v. Stewart, 5 Blackf., 121; State v. Brooks, 9 Ala. 9 ; Eaton v. Commonwealth, 6 Binn. 447.

In addition to the right which appellant claims, under the Constitution and laws, to insist upon a jury legally organized, he shows actual injury from the neglect of the County Court, to pursue the requisitions of the statute. Had the list been revised and amended, it is probable that some of those who, after the last revision became qualified jurors, might have been on the jury. He had a right to the chances.

*Henderson & Jones,* also, for appellant. It is enacted by the statute of May 4th, 1846, entitled an Act to regulate juries, Sec. 1st. " That the County Courts of the several coun- " ties of this State shall prepare a list of such persons under

" the age of sixty years, in their respective counties, as they " shall judge qualified to serve as jurors, being persons of " good moral character," &c., and Section 2nd prescribes, " That the County Court, at its first meeting in every year, " shall revise and amend the list in the jury book, by adding " thereto the names of such persons as have become qualified " to serve as jurors, placing their names in jury box No. 1, " and by erasing from such list, and withdrawing from the " jury box, the names of such persons as may be disqualified " or privileged from serving as jurors; but when it may be " inconvenient to add to or erase from the list, a new list may " be made in the jury book." (Hart. Dig. Art. 1641, 1642.)

In answer to this requirement that the jury list shall be revised every year, it may be said that it is merely directory, and that the list is not vitiated or rendered invalid through the neglect to make such revision. But to this it may be replied, that the same answer might be made, with equal force, to the requirement in the 1st Section, " that the County Court shall prepare a list," &c., and that a bill of indictment found by a jury not adjudged qualified by the County Court, and a list of whose names has not been made out as required by the statute, is nevertheless valid. But see State v. Jacobs, 6 Tex. R. 99; State v. Brooks, 9 Ala. R. 9.

The qualification of jurors is a matter assigned by the law to the judgment of the County Courts; it is assigned to them particularly, and it is given to no other Court or tribunal; and, in consequence, the authority which is here given to them, can be exercised by no other tribunal; and if they should neglect to discharge their duty, nothing further can be done. But this duty to prepare a list of such persons as they shall judge qualified to serve as jurors, being persons of good moral character, &c., is one which the County Courts are required to discharge annually; " the County Court, at its first meet- " ing in every year, shall revise and amend the list in the jury " book, by adding thereto the names of such persons as have " become qualified to serve as jurors, &c; and by erasing

" from such list, and withdrawing from the jury box, the names " of such persons as may be disqualified or privileged from " serving as jurors;" and " when it may be inconvenient to " add to or erase from such list, a new list may be made in " the jury book;" but a revisory judgment must always be made on the qualifications of the jurors. So that if it was necessary in the first instance, that the judgment of the County Court be had on the qualifications of the jurors, and a list of such persons, judged qualified to serve, be made out; it is likewise necessary that this judgment on their qualifications be had every year, and, according to such judgment, that the old list be amended, or a new list be prepared. (See State v. Brooks, 9 Ala. R. 9.)

2nd. That the names of certain jurors are not on the list prepared by the County Court. (See State v. Jacobs, 6 Tex. R. 99; State v. Brooks, 9 Ala. R. 9.)

The case of Sayle v. The State, 8 Tex. R. 120, is not in conflict with the case in 6 Tex. R. In Sayle v. The State, the plea in abatement was, that the names of the grand jurors " do not appear by any list prepared by the County Court," &c., and the Court said that it was consistent with this plea, that a list with such names on it had been prepared by the County Court, but was afterwards lost or destroyed by some casualty; and they, for that reason, held the plea to be insufficient. But the plea in the present case will not admit of such a construction. And in this view, the case of Sayle v. The State is, not only not in conflict with The State v. Jacobs, but is an additional authority to the same point.

It was said that the list of the jurors may have been revised. Suppose it has; the plea equally embraces that case as well as another. It says that " the names of William A. Tutle and James B. Franklin, two of the persons who served " on said grand jury, are not found on the said jury list, made " in said County Court." If this list be an original list, or a revised and amended list, or a new list, it is all one; it is the list for the occasion made by the County Court.

But the Court is not allowed to indulge in the presumption that the list has been revised, for this is stated in the plea in abatement under oath to be otherwise.

*Attorney General*, for appellee.   Appeal from a conviction for betting at rondo.   The only error assigned is in sustaining the State's exception to defendant's plea in abatement of the indictment.

I. The first and fourth allegations of the plea are to the effect that the jury list from which came the grand jury, was not revised for more than a year before the Term of the District Court at which the indictment was found, i. e. at the first Term of the County Court in 1853, admitting that the County Court had previously not failed in the discharge of that duty. The County Court having obeyed the injunction of Art. 1641 of the Digest, in providing jury boxes, a jury book, &c., and in selecting, listing, and causing to be recorded the names of jurors for the county, does a subsequent failure on their part to revise that list under Art. 1642, for a single year, totally stop the jury service for that year, for that at least would be the result of the success of defendant's plea ?   I trust that important arm of the District Courts is not exposed to so fearful a hazard.   I admit that the words imposing duties on the County Courts in the two articles cited are very similar in import, whether they be mandatory or directory ; but I apprehend their scope and object make the consequences of a failure in one of them widely different from a similar result in reference to the other.   When, under the first of these sections, a jury has been duly selected, boxed, listed and recorded, there is organized and established a regular jury corps, for the county, which by the act is to constitute a standing body of jury material, subject only to such annual modifications as the County Court is commanded to make ; and is the failure of the County Court to make those modifications for a single year to utterly subvert the main body and render it impotent ? for, according to the position or ground of the plea we are consid-

ering, this would be the result in all time to come, the argument, being, that to fail to revise for one year is to break the chain, and its disjointed parts could never get together again. A consequence so fatal to the enforcement of the law could never have been intended by the law; and one so blighting to justice can never be presumed by Courts of Justice. No such penal consequence is declared in the Act, and while we admit that, when the County Court has fully performed the duty of selecting and listing, the jurors must come from those listed, there is no authority that persuades, or principle that requires us to reject those who are duly drawn from the organized body of qualified jurors, although it be not regularly pruned and re-engrafted.

NOTE.—It has been suggested to me by R. S. Walker, Esq., that a further answer may be given to the grounds of the plea first considered, viz: that it is a presumption of law that the County Court did its duty, and that the non-appearance of any revision on the jury book, is no evidence that no revision took place, for suppose having met and considered the matter, that Court determined that they would not add any names to the list or erase any from it, then they might well decline making any entry on the subject.

The only authority we have at command in this point, is to be found in the case of The State v. Brooks, 9 Ala. 9, in which it is decided that a drawing of jurors, similar to that brought up by the *certiorari* in this, and duly certified, is conclusive against any collateral assault, as per plea in abatement.

II. Because (at the time of filing the plea) the name of certain grand jurors "are not to be found in the jury list," &c. This exception is precisely the same as the one overruled by this Court in Sayle v. The State. (8 Tex. R. 120.)

III. Because there appears no order of the County Court upon its minutes, directing said list, &c. This objection is cautiously evasive of the true point. It does not deny that this order was on the minutes at the proper time, nor that it is yet in the jury book, where it ought to be and doubtless

is to be found in such terms as would satisfy the law, no particular form being prescribed of showing their performance of this duty. (Dig. Art. 1641.)

WHEELER, J. It might suffice to dispose of this case, that the falsity of the plea may have been apparent to the Court from the entries and records brought before it by the exceptions. The Court might well decline to hear evidence in support of, and overrule a plea, which appeared by the record, to be untrue. Exceptions to a plea, the truth or falsity of which is apparent by the record, cannot have such effect, as admissions, as to falsify the record; or to require the Court to hear evidence in contradiction thereof. That the jury list had been revised as the law directs, and that the names of the persons who served as grand jurors were upon the jury book, may have been apparent to the Court by inspection of the record brought before it by the exception. And as those records are not embodied in the transcript before us; and there is nothing appearing to the contrary in the records, we must presume, if necessary to support the judgment, that it did so appear to the Court conclusively by the records before it. The case cited by counsel (The State v. Brooks, 9 Ala. 9) is an authority for holding the records of the County Court conclusive evidence of the facts they recite, (and see 3 Ala. 378.) And this is not inconsistent with the doctrine, heretofore maintained by this Court, that matters showing the want of the requisite legal qualifications of grand jurors, may be pleaded in abatement to an indictment found by them, and may be proved by evidence *aliunde*. For the record may not recite the facts constituting their legal qualification; and if it did show them possessed of the requisite qualifications, at the time their names were entered in the jury book, they may have become disqualified before serving upon the grand jury; and so the record can afford but *prima facie* evidence that, at the time of finding the indictment, they possessed the requisite legal qualification. (Jackson v. The State, 11 Tex. R. 261.)

We might therefore affirm the judgment in this case, on the ground that it does not appear by the record, that the Court erred in its judgment, though it were admitted that the plea in abatement, if true, would have required a different judgment.

But, as it is proposed by the opinion in this case, to dispose of similar questions in other cases, in which they have not been so fully discussed ; but in which they are presented in a manner requiring a decision upon their merits, we may consider the matters pleaded in abatement, as admitted by the exception, without reference to the record evidence on which the Court may have acted in sustaining the exceptions.

It is said in Wharton's American Criminal Law, that "Much " difference of opinion has existed on the question whether, " after bill found, the defendant can take advantage of the in- " competency of any of the grand jury who found it. In Mas- " sachusetts, it was said, generally, that objections to the per- " sonal qualifications of a grand juror, or to the legality of the " returns, cannot affect any indictments found by them, after " they have been received by the Court and filed; and though "'the doctrine was doubted in a subsequent case, it cannot be " said to have been overruled. The New York practice, at " Common Law, was, as has been stated, substantially the " same." He refers to the decisions of other State Courts, showing a contrariety of opinion on the question whether even the want of legal qualifications, or competency on the part of grand jurors, can be pleaded in abatement. He thinks the English rule is that it may be so pleaded. " It is neces- " sary, however, (he concludes) that the plea in such case " should set forth sufficient to enable the Court to give judg- " ment on it on demurrer; thus, where, upon a presentment " by a grand jury for gaming, the defendant tendered a plea " in abatement, that one of the grand jurors nominated him- " self to the Sheriff to be put on the panel, and he summoned " him to serve, without alleging that this nomination of him- " self, by the grand juror, was corrupt, or that there was a.

"false conspiracy between him and the Sheriff for returning "him on the panel, it was held that the plea was naught." (Wharton's Am. Cr. Law, 121, 122.)

Mr. Wharton, by his references, shows that while in some of the States, as Virginia and Tennessee, it is held that the incompetency of grand jurors may be pleaded in abatement, in others, as Massachusetts and New York, it was held that at Common Law even this could not be done. And he refers to no case, in which it has been held that mere irregularities in the manner of constituting, or impannelling the grand jury, can be pleaded in abatement. And the cases he cites, in so far as we can judge of their doctrines from his references, and especially the case referred to last in the quotation I have made from his text, (Com. v. Thompson, 4 Leigh, 667,) go far to support the opposite conclusion ; that is, that it is only matters which go to the competency of grand jurors, that can be pleaded in abatement. Such seems evidently the Virginia doctrine, from his statement of the ruling in the case cited. In the case of the Commonwealth v. Smith, (9 Mass. 108,) cited by Wharton, the reporter deduces from the case the general principle, that " After an indictment has been re-" ceived and filed by the Court, no objection of an irregularity " in impannelling the grand jury can be received as a plea to " such indictment." The plea in this case, however, was that one of the grand jurors who found the indictment was incapacitated to serve as a juror. The Court held the plea bad. And in a note by the reporter it is said, that " Hawkins says " that if any one of a grand jury who find an indictment, be " within any of the exceptions to the statute, he vitiates the " whole, though ever so many unexceptionable persons joined " with him in the finding, (B. 2, Ch. 25, Sec. 28,) and that " the prisoner may plead such matter in avoidance of the in-" dictment, and plead over to the felony. (B. 2, Ch. 25, Sec. " 26.) And so says Chitty, if it be discovered after the find-" ing. (Crim. Law, vol. 1, p. 307.)" But there is no intimation that irregularities in the manner of constituting the grand

Vanhook v. The State.

jury, which do not extend to the impannelling of persons as jurors, who are incompetent to serve, can be pleaded in avoidance of the indictment. The only case we are aware of, which maintains that doctrine, is the case cited by counsel for the appellant, of the State v. Conner, decided by the Supreme Court of Indiana. (5 Blackf. 325.) In that case it was held that if the record of the board doing county business, do not show that the grand jurors who found an indictment were selected according to the provisions of the statute, the indictment will be quashed. And the decision was placed upon the ground that "the indictment was therefore found by an incompetent grand jury." (Id. 327.) The conclusion of the Court seems to be a *non sequitur*. The more logical conclusion would seem to have been, that it did not affirmatively appear that the indictment was found by a competent grand jury. The result might, perhaps, have been the same. But this decision appears to have been very shortly afterwards followed by legislative interposition, to prevent the mischiefs, which such a doctrine would have occasioned. (Bellair v. The State, 6 Blackf. 104.) The same Court had previously decided that a departure from the statute, in selecting the grand jury, or an omission and an irregularity in selecting a petit jury, would be good cause of challenge to the array. (3 Blackf. 37, 258, 259; 5 Id. 121.) And this seems to be the extent to which the authorities on the subject warrant the Court in going. But even a challenge to the array, it is said, "will "not be allowed on the ground that in the selection of the " grand jurors, all persons belonging to a particular fraternity " were excluded, if those who are returned are unexception- " able, and possess the statutory qualifications." (Wharton's Am. Cr. Law, 121.) And, "in New York, while it is said to " be a good cause of exception to a grand juror, that he has " formed and expressed an opinion as to the guilt of a party " whose case will probably be presented to the consideration " of the grand inquest, it is added, that such exceptions must " be taken before the indictment is found, and will not after- " wards be heard." (Id. 120.)

The better opinion, to be deduced from the authorities to which we have access, seems to be, that irregularities in selecting and impannelling the grand jury, which do not relate to the competency of individual jurors, can, in general, only be objected by a challenge to the array. But that the incompetency, or want of the requisite qualifications of the jurors, may be pleaded in abatement to the indictment. And this doctrine and distinction seems founded on principle. It is the right of the accused to have the question of his guilt decided by two competent juries, before he is condemned to punishment. It is his right, in the first place, to have the accusation passed upon, before he can be called upon to answer to the charge of crime, by a grand jury composed of good and lawful men. If the jury be not composed of such men as possess the requisite qualifications, he ought not to be put upon his trial upon a charge preferred by them ; but should be permitted to plead their incompetency to prefer the charge and put him upon his trial, in avoidance of the indictment. Otherwise, he may be compelled to answer to a criminal charge preferred by men who are infamous, or unworthy to be his accusers. And it may be that he will not have had an opportunity afforded to question their competency before the finding of the indictment. For the accused is not supposed to be present when the grand jurors are impannelled; he may not have been the subject of complaint or of suspicion ; and if he could not plead to the indictment, in such a case, the incompetency of his accusers, the right to have the accusation preferred by good and lawful men might be virtually denied him. It is for the purpose, therefore, of securing to the accused a substantial right, affecting, it may be, his character and good name, if not his personal security, that he is allowed to plead in abatement or in avoidance of the charge, the incompetency of the persons by whom it was preferred. But if the jurors who preferred the charge are good and lawful men ; unexceptionable as respects qualifications, it can be of no consequence to the accused in what manner they were selected, or how im-

pannelled ; while it may be of the utmost consequence to the public that the administration of justice be not delayed or defeated by mere technical objections to the regularity of the proceedings of those who are appointed for the purpose of properly distributing and equalizing the burdens of the jury service. It is in these considerations, which have respect to the rights of the citizen on the one hand, and public convenience on the other, that the rules of the law on this subject are founded. And while they subserve the interests of the public, they can in no degree affect injuriously any rights of the accused.

In the case cited from 9th Alabama, it is said, that the board (appointed for the selection of juries) " is required to " perform its duties in a particular manner, but is entirely in- " dependent of any supervision or control; its action, by the " eighth paragraph of the ninth Section, is to be ascertained " and made known by means of the certificate of the officers " who compose it ; when this certificate is made, its functions " cease for the time, and there seems to be no mode by which " its action upon the matters confided to it, can be collaterally " called in question or examined."

And again, " The jurors, when once selected and certified, " seem to stand in the same condition as any other *de facto* " functionaries, whose acts will not be vitiated, although they " may be afterwards set aside as having had no right, in the " first instance, to exercise the function." (9 Ala. R. 13.)

In the case of The State v. Foster, (9 Tex. R. 65,) upon what is understood to be the English, and the better American doctrine, we held that the incompetency of a grand juror, by reason of the want of the requisite legal qualifications, may be pleaded in abatement. And the same principle was reaffirmed in the case of Jackson v. The State (11 Tex. R. 261.)

In the case of The State v. Jacobs, (6 Tex. R. 99,) it appeared by the record, that after the grand jury had been impannelled and sworn for the Term, the Court awarded a *venire facias* to summon a second grand jury, without having dis-

posed of the grand jury previously impannelled ; and afterwards entertained a challenge to the array to the first jury, because the names of three of their number were not on the jury book kept by the County Court. The Court set aside the entire grand jury first impannelled, when there was a competent number of jurors free from objection, and when if there had not been, the statute prescribed the manner in which their places should be supplied without affecting the pannel. (Dig. Art. 1651, 1652.) It was held that the action of the Court was improper and illegal ; that the Court had no authority to issue a second *venire* before the first was disposed of ; that the jury first impannelled was the legal grand jury for the Term ; that the second was impannelled without the authority of law, and that this was good cause for quashing an indictment found by them. This was the extent of the adjudication in that case. And it went to the full extent we feel authorized to go, in entertaining objections to the manner of constituting the grand jury, after they have acted in the capacity and discharged the office of jurors, and there is no question of their possessing the requisite legal qualifications. It would perhaps have been a sounder doctrine, and more in accordance with principle and authority, to have held that the objection should have been taken by challenge to the array, and came too late after indictment found. In that case, however, the irregularities complained of were committed by the District Court, and appeared by the record ; and the case affords no pretence for the supposition that, the errors, omissions or irregularities of the County Court in relation to the selection of jurors, can be collaterally drawn in question by pleading to an indictment. Nor was there any question before the Court, as to what would be the effect upon the finding of the grand jury, where the names of some of its members were not on the jury book kept by the County Court.

We deem it unnecessary to enter into a critical analysis of the law respecting juries, or of the cases cited ; or further to protract the examination of this subject. Though there may

have been occasional, or casual expressions of opinion, or *dicta*, to the contrary, we think it free from doubt, that the sound and true doctrine on this subject, and the only rule of safety, is, that objections to the manner of constituting the grand jury must, in general, be taken by challenge, either to the array or to the polls, and cannot be taken by pleading to the indictment; but that objections to the competency of individual jurors, may be pleaded in abatement. If the objection be to individual jurors, as, in the case of The State v. Jacobs, that their names were not on the jury book, it is cause of challenge to the polls ; but if the objection be to the whole panel, it should be taken by challenge to the array.

This liability to challenge, for irregularities committed by the County Courts and other officers in selecting juries, will admonish them of the necessity of a strict observance of the law ; and will be as effectual to insure its observance as would be the permitting of these irregularities to be pleaded in avoidance of the indictment. And, on the other hand, the right to plead in abatement the want of competency in jurors, effectually secures to the accused the only right he has, or can have a pretence to claim ; that is, the right to have the accusation preferred by men unexceptionable in respect to qualifications. For there can be no pretence that it can be of any consequence to the accused, or that it can be at all material to his having a fair and impartial trial, in what manner, under the law, the jury is to be selected and impannelled, or what may be the regulations prescribed for the government of the officers in the performance of that duty, so that the jury is composed of good and lawful men, approved and accredited by possessing the proper qualifications. Every defence which a party is entitled to claim, is given to secure to him the enjoyment of some right; but it cannot be supposed that the right of the accused to a fair and impartial trial can be affected by the manner in which the jury, who are to determine the question of his guilt or innocence, may have been brought together for that purpose ; or that the object of the law, in pre-

scribing regulations for the government of its officers, in the performance of acts merely ministerial, appertaining to their duty in the selection of juries, was to secure that right to those who should be called to answer to a charge of having violated the law. The object of these regulations is very well expressed in the latter clause of the 4th Section of the Act, directing what disposition shall be made of the names in drawing the jury, which is, "so as (in the language of the statute) to pre- "serve, as nearly as may be, rotation in the service of jurors, "and to subject to jury service all who are legally qualified "to serve." (Hart. Dig. Art. 1644.)

It therefore is not because it was deemed necessary to secure to the accused any right, that these regulations were framed. Nor can it be with reason contended that he has the right to draw in question the regularity and legality of the acts of the officers to whom the duty of selecting juries is intrusted.

Our conclusion, therefore, is, that the matters averred in the plea, though they may have been good cause of challenge, were not the proper subject of a plea in abatement; and that the Court did not err in adjudging the plea insufficient. The judgment is therefore affirmed.

Judgment affirmed.