[No. 1137.]

THE STATE OF NEVADA, RESPONDENT, *v.* SAMUEL COLLYER, APPELLANT.

MOTION TO QUASH INDICTMENT—WHEN SHOULD BE MADE—SELECTION OF GRAND JURY.—A motion to quash an indictment, because the grand jurors were not selected according to law, ought to be made before plea.

IDEM—WHEN MAY BE WITHDRAWN.—If the plea has been entered and the motion to quash thereafter made in good faith, before the trial commences, the court should allow the plea to be withdrawn, and give defendant an opportunity to be heard upon his motion.

IDEM—CHALLENGE TO PANEL OF GRAND JURORS.—The right of challenge to the panel of the grand jurors is restricted to the three grounds enumerated in the statute (Civ. Pr. Act, 179; 1 Comp. L., 1807), and the fact that these statutory grounds have no application to the present method of selecting a grand jury does not authorize the court to consider the motion as a challenge to the panel.

IDEM—WHEN INDICTMENT WILL NOT BE SET ASIDE FOR IRREGULARITIES IN THE MODE OF SELECTING GRAND JURY.—The statute requiring grand jurors to be selected from the "jury list" was not intended simply as a protection to parties who might be brought before the grand jury. When the persons selected by the proper officers were qualified jurors, whose names ought to have been on the jury list, and the selection was made without fraud or collusion, the mere failure of the officers to keep the jury list reformed does not furnish a sufficient ground to authorize the court to set aside an indictment.

INDICTMENT FOR "ASSAULT WITH INTENT TO KILL" SUFFICIENT TO SUSTAIN CONVICTION FOR "AN ASSAULT WITH A DEADLY WEAPON."—The sufficiency of an indictment must be determined with reference to the crime charged, and if the indictment is good for the crime of "an assault with intent to kill," it is sufficient to sustain a conviction of "an assault with a deadly weapon, with intent to inflict a bodily injury." The graver charge includes the less.

IDEM—DEADLY WEAPON NEED NOT BE AVERRED.—In an indictment for an assault with intent to kill it is not necessary to allege in direct terms that the instrument used was a deadly weapon.

IDEM—EVIDENCE.—The means of effecting the criminal intent, or the circumstances of evincing the design with which the assault was made, are matters of evidence, and need not be set forth in the indictment.

IDEM—DOUBT AS TO DEADLY WEAPON.—When there is any doubt as to whether the instrument used in committing the assault was a deadly weapon, it is a question for the court and jury to decide.

VERDICT—OMISSION OF WORDS "WITH INTENT" DOES NOT VITIATE.—The jury found defendant guilty of " an assault with a deadly weapon, to inflict a bodily injury," etc.: *Held*, that the omission of the words " with intent," after the word " weapon," did not vitiate the verdict.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*W. E. F. Deal*, for Appellant:

I. Defendant was guaranteed by the constitution the right to be tried upon an indictment found by a grand jury. Of this right he was deprived by the lower court. It is essential that the grand jury should be formed as provided by the laws of the state; otherwise its acts are null and void. (*People* v. *Southwell*, 46 Cal. 150; *State* v. *McNamara*, 3 Nev. 70; *State* v. *O'Flaherty*, 7 Nev. 157; *People* v. *Coffman*, 24 Cal. 234; *People* v. *Thurston*, 5 Cal. 69; 1 Bish. Cr. Pro., sec. 761, 889.) The statute in force at the time of finding the indictment in the record required that the grand jury be selected from the jury list. This was not done. Not only was the jury list not before the officers who selected the persons from whom the so-called grand jury was formed, but it was not even referred to.

II. The motion to quash the indictment is not on any ground stated in the statute. The paper called an indictment was not an indictment. It was not found by a grand jury, and it should have been stricken from the files of the court as a nullity. (*People* v. *Thurston*, 5 Cal. 69; *People* v. *Southwell*, 46 Cal. 150; *Nicholls* v. *State*, 2 South. 541; *Commonwealth* v. *Chapman*, 11 Cush. 425; 38 Maine, 200.)

III. The court erred in its judgment upon the verdict. It was necessary that the indictment should have alleged that the assault committed by the defendant was with a deadly weapon. It nowhere appears that the knife used was a deadly

weapon. It is not described in the indictment so that any presumption could be indulged in that it was a deadly weapon, nor does the indictment anywhere allege that it was deadly. (*People* v. *Vanard*, 6 Cal. 563; *People* v. *War*, 26 Cal. 117; *People* v. *Jacobs,* 29 Cal. 579; *People* v. *Urias*, 12 Cal. 325; *People* v. *English*, 30 Cal. 215; *People* v. *Congleton*, 44 Cal. 93; *Ex parte Ah Cha*, 40 Cal. 426; *State* v. *O'Connor*, 11 Nev. 420; *State* v. *Robey*, 8 Nev. 313.)

*M. A. Murphy*, Attorney-General, for Respondent:

By the Court, HAWLEY, C. J.:

Appellant was indicted and tried for the crime of " assault with intent to kill," and convicted of " an assault with a deadly weapon to inflict a bodily injury upon the person of F. N. Bidleman."

He claims that the indictment was not found by a legal grand jury, and that it should, for that reason, have been set aside by the court.

When the indictment was found (September 13, 1882) he was not in custody and had not been held to answer. He was arrested and brought before the court on the next day (September 14) for arraignment, and an attorney was then appointed by the court to defend him.

Two days thereafter (September 16) he appeared and entered his plea of not guilty. Three days after his plea was entered the case was regularly called for trial, and having in the meantime secured additional counsel, he moved the court for leave to withdraw his plea of not guilty and to move the court " to quash, set aside and strike said indictment from the file of said court as a nullity, because the persons who found said indictment do not constitute a legal grand jury and were not selected according to law."

The specific objection being that the persons composing the grand jury were not actually selected from the jury list as required by the " act concerning juries " (Stats. 1873, 126; 1879, 34; 1881, 27.)

For the purpose of asking leave to make said motion it was admitted that the names of certain persons who were selected

to serve as grand jurors were not upon the jury list, and that the grand jury was selected in the following manner: The district judge and one of the county commissioners, after the commencement of the term, "selected the names of twenty-four persons, residents and citizens of said Storey county, and well known qualified electors of the county, from the names of such persons known qualified electors of the county as the said judge and said county commissioner concluded in their judgment would make good grand jurors, and whose names should be of right upon the jury list, knowing them, to be qualified electors. * * * That none of the names of said persons were in fact drawn from the book containing the jury list, * * * which jury list had not been reformed for several years." It was further admitted that these facts were known to the attorney of defendant (appointed by the court) when the plea of not guilty was entered. Upon these facts the court "refused defendant leave to withdraw his said plea of not guilty, and refused defendant leave to make said motion, and refused to quash or set aside the indictment, because the said motion was made too late." Section 2 of the jury act (Stat. 1873, 126) provides for a jury list which shall contain "the name of every qualified juror of the county, so far as the same can be ascertained." Section 8 declares that "it shall be the duty of the district judge and any one of the county commissioners of the county, at least once in each year, and as much oftener as the public interest may require, to select from the jury list twenty-four persons, who shall be summoned to appear as grand jurors at such time as the judge may order." (Stat. 1881, 27.)

Was the motion made in time?

Bishop, in giving the general views upon this subject, says that "a motion to quash the indictment ought to be made at an early stage of the cause. * * * The doctrine to be drawn from the cases and from the reasons of the law combined appears to be that the motion to quash, not being one of right, but of privilege granted by the court to the defendant, will not be received when presented at any unreasonable time. Yet, what is a reasonable time will depend upon the nature of the objection to be reached by the motion, the dili-

gence used by the defendant in bringing it forward, and many other things not possible to be stated in a general proposition." (1 Bish. Cr. Pro., sec. 762.)

We are of opinion that motions of this character ought, under the provisions of our statute, to be made before plea. If a wrong has been committed the law intends that the party injured shall have a remedy; but where it provides the manner in which relief shall be given, the path pointed out should be followed. It is important, to the fair and impartial administration of justice, that the time for making such motions should be restricted. A party ought not to be permitted, after taking his chances of a trial, to take advantage of any irregularity in the selection of a grand jury, of which he had knowledge before his plea of not guilty was entered. By pleading to the indictment it will be considered that he consented to the irregularity, and thereby waived his right to make any objection to the method of selecting or impaneling the jury. (*State* v. *Roderigas*, 7 Nev. 333; *State* v. *Larkin*, 11 Nev. 325; *People* v. *Coffman*, 24 Cal. 234; *People* v. *Stacey*, 34 Cal. 308; *State* v. *Bleekley*, 18 Mo. 430; *Van Hook* v. *State*, 12 Tex. 268; *Reed* v. *State*, 1 Tex. Ct. of Ap. 1; *McElvoy* v. *State*, 9 Neb. 164; *Barron* v. *People*, 73 Ill. 258.)

The decision of the court that the motion was made too late was, therefore technically correct. But we are of opinion that in the exercise of a sound judicial discretion, in a case like this, where the motion is made, in good faith, before the trial commences, it would be the better pratice to allow the plea to be withdrawn and give defendant an opportunity to make his motion to quash the indictment, especially if the court was of opinion that there was any merit in the motion. (*Nicholls* v. *State*, 2 Southard, 541; *State* v. *Hale*, 44 Iowa, 97; *State* v. *Riffe*, 10 W. V. 799.) Entertaining these views, we shall not base our decision upon the ground relied upon by respondent, but will consider the question whether the motion should have been granted if the plea had been withdrawn.

The jury law of this state has ever been a fruitful theme for legislative enactment. (Stat. 1861, 139; 1864–5, 137; 1866, 191; 1873, 126; 1879, 34; 1881, 27.)

The criminal practice act, however, has not kept pace with the jury system.

The grounds therein specified upon which challenges may be made to the panel of the grand jury have not been changed in any respect. (Stat. 1861, 481, sec. 179; 1 Comp. Laws, 1807.)

In this case no challenge was, in direct terms, interposed to the panel of the grand jury; and the manner of selecting or impaneling a grand jury does not appear to be one of the grounds provided by statute for setting aside the indictment (Stat. 1861, 464, sec. 275; 1 Comp. L., 1899), and if appellant was entitled to be heard, it is questionable whether his motion would not have to be considered as a challenge to the panel of the grand jury. If so considered the motion should have been denied.

It was intended by the provisions of section 179 (1 Comp. L., 1807) to restrict the right of challenge to the three grounds therein enumerated, viz: "First, that the requisite number of ballots was not drawn from the jury box of the county as prescribed by law; second, the notice of the drawing of the grand jury was not given as prescribed by law; third, that the drawing was not had in the presence of the officers, or officer, designated by law."

None of the grounds set forth in the motion are included within those specified in the statute.

The fact that the statutory grounds of challenge have no application to the present method of selecting a grand jury would not authorize the court to consider the motion as a challenge to the panel. Courts have no power "to originate a new and distinct ground of challenge." (*People* v. *Southwell*, 46 Cal. 146; *State* v. *Bleekley*, 18 Mo. 431; *Green* v. *State*, 1 Tex. Ct. of Ap. 86.) But conceding, for the purpose of the argument (without deciding the question), that the motion could be made and considered under the first subdivision of section 275 of the criminal practice act (1 Comp. L., 1899), on the ground that the indictment was not "found" as prescribed by law, it would not, in our opinion, follow that the motion should have been granted upon the facts of this case.

There are several cases where the courts have held that a material departure from the mode provided by law for selecting or impaneling a jury (grand or trial) would authorize them to set aside an indictment or grant a new trial. As, for instance, when the jurors were selected by officers not authorized by law to make the selection (*State* v. *McNamara*, 3 Nev. 73; *State* v. *Williams*, 5 Port., Ala., 135; *Dutell* v. *State*, 4 Iowa 125), or where the indictment was found by a grand jury composed of a greater number of persons than was authorized by statute. (*People* v. *Thurston*, 5 Cal. 69; *State* v. *Ostrander*, 18 Iowa 442.)

But it is not every deviation from the prescribed methods that will justify such a course to be pursued, and each case is, therefore, made to rest upon the particular facts presented.

It will be observed, upon an examination of the statutes now in force, that there is a material difference in the mode provided for the drawing of trial jurors and the method of selecting grand jurors. The trial jurors must be drawn from the names in the jury box; the grand jurors are to be selected from the jury list. Now, it may be that, if the trial jurors are not " drawn from the jury box," a party might be deprived of a material right guaranteed to him by the provisions of the statute, while the irregularities complained of in the selection of the grand jury would not deprive him of any substantial right. It is clear to our minds that the laches of the officers in this case did not result in any prejudice or injustice to the defendant.

It is not claimed that there was any fraud or collusion in the selection of the grand jury, but it was argued that unless the statute was strictly complied with it might, in some cases, lead to great injustice; that the judge and county commissioner might select a grand jury for a special purpose, and arbitrarily take such persons as they thought could be safely relied upon for the accomplishment of such purpose, whether their names were on the jury list or not. It will not be presumed that any judicial or other officer would use the power given to him for any such purpose.

If any effect should be given to this argument, which was

earnestly presented by appellant's counsel, it was addressed to the wrong tribunal. It would simply prove, if it proves anything, that the law relative to the selection of the grand jurors ought to be changed.

It will be noticed that the jury list can be amended at any time, "by adding thereto the names of all qualified persons not already included therein," and that it is made the duty of the district judge, when so requested by any person whose name is on the list, "to order such names to be added to the list, if it satisfactorily appear that they are qualified jurors of the county."

Under these provisions the officers could, of their own motion, have added to the list the names of the jurors selected that were not on the list, and then have made an arbitrary selection of twenty-four persons to be summoned.

In this manner they could (and doubtless would) have chosen the identical names that were selected. The only departure from the method prescribed by law was in their failure to have the names of all qualified persons placed on the list before selecting the persons to be summoned as grand jurors.

We are of opinion that the members of the legislature deemed it to be the wisest course to leave the selection of grand jurors to the sound judgment of the officers specified in the law, else they would not have made any distinction between the methods adopted for the selection of trial jurors and of grand jurors.

They had the right to believe that the officers would faithfully discharge the duties imposed upon them, and that the mode adopted would prove more beneficial to the public interests, and would not, in any manner, be detrimental to the rights of persons who might be accused of crime.

The provision for a jury list was made, among other reasons, for the purpose of securing, as far as possible, an equal distribution of trial jury duty among the citizens of the respective counties, and the provision authorizing the district judge and county commissioner to select the grand jurors from this list was inserted as a matter for their information and convenience, that they might have before them the names of all the

qualified jurors in the county, and was not intended simply as
a protection to parties who might be brought before the grand
jury.. The failure of the officers to keep the jury list reformed
was a matter of which the public might complain; but, in the
absence of any fraud, collusion, dishonesty or unfairness upon
the part of the officers, it does not furnish a sufficient ground
to authorize the court to set aside an indictment.    The persons
selected were qualified jurors, whose names ought to have
been on the jury list.    They were selected by the proper offi-
cers, and their acts were valid.

In *Friery* v. *People*, it appeared from the challenge to the
array that the statute regulating the drawing and summoning
of jurors had been directly violated.    The court said: "The
question is, with what purpose or intent were these statutory
regulations for the drawing and summoning of jurors made?
Were they made for the benefit of the parties to trials by jury,
and for the purpose of securing such parties (in civil and crim-
inal proceedings) an impartial array of jurors, from which the
jury to try the issue might be taken; or were these statutory
regulations made for the purpose of securing an impartial dis-
tribution among citizens of the onerous duty of performing jury
service?    If the former was the purpose or intent,    *    *    *
then it was the prisoner's right to have the statutory regula-
tions complied with, independent of any suggestion of fraud
or of misconduct, other than a failure to observe the statutory
regulations.    If, however, the purpose of the regulations was
merely to secure a fair and impartial distribution of the jury
duty among the citizens at large, then, in the absence of any
suggestion of fraud or of misconduct, other than a mere fail-
ure to observe the regulations, it appears to me that the public
only can complain of the disregard of the regulations." (54
Barb. 339.)

In *Keech* v. *State*, the defendant pleaded in abatement to
the indictment that the certificate of the chairman of the
county commissioners was not recorded by the clerk with the
list of persons selected as qualified to be jurors as required by
statute.    The court said that the object of recording the list
"is to preserve upon the records the list of names, and for the
information and convenience of the court.    It can scarcely be

said that the omission of the clerk to record the certificate or even the list is an irregularity in respect to the selection, summoning or impaneling of jurors. If the clerk neglects to perform such duty as directed by the statute, the court may require and compel him to do it at any time, and thus the omission is cured. The accused cannot be prejudiced by it. If the list is, in fact, certified to the clerk, he is required to write the names on separate slips of paper and deposit them in a box from which the juries are drawn, and it can make no difference to the accused that the list or certificate is not recorded until after the ballots are thus prepared or the jury drawn." (15 Fla. 599.)

In *The State* v. *Champeau*, the defendant pleaded that the names of three of the persons selected as grand jurors were not drawn out of the box, as provided by statute, but were drawn by the sheriff "by selecting from a package of numbered cards presented to him by the city clerk of said city three certain numbers seen by said sheriff at the time of said drawing, which numbers so drawn corresponded with the numbers set opposite the names" of said three persons in the public records. The court said: "The method of drawing the three jurors named in the plea was not strictly according to the statute. It seems to have been an attempted improvement on the statutory method. The officers engaged in it will serve the public better by adhering to the statutes in the discharge of this public duty than by deviations therefrom with a view to improvements, or with any other view. But it appears that the persons drawn in this case were among those regularly chosen, and it does not appear but that the drawing was fair, or that the persons drawn were not proper persons to be drawn, or that any wrong or injury has resulted, or that there was any fraud or collusion. We, therefore, think the method of drawing was not such an irregularity as to vitiate the indictment." (52 Vt. 316.)

From an examination of the authorities it will be seen that "courts do not look with indulgence upon objections to irregularities in the mode of selecting or drawing grand jurors committed without fraud or design, which have not resulted in placing upon any panel disqualified jurors." (*Ferris* v.

*People,* 31 How. Pr. 145; Id. 35 N. Y. 125; *Dolan* v. *People,* 64 N. Y. 492; *Van Hook* v. *State,* 12 Tex. 271; *Coker* v. *State,* 7 Tex. Ct. of Ap. 86; *State* v. *Breen,* 59 Mo. 415.)

If the court could have considered the motion, it would have been its duty to have denied it, and its action in refusing to set aside the plea is sustained upon the ground that the motion to quash was without merit.

It is claimed that the indictment does not sustain the verdict because it is not alleged therein that the assault was committed '' with a deadly weapon.''

It is charged in the indictment '' that the said Samuel Collyer, in and upon the body of F. N. Bidleman, feloniously and of his malice aforethought, did make an assault, and the said Samuel Collyer, with a certain knife, which said knife the said Collyer there and then had and held, then and there wilfully, feloniously and of his malice aforethought did strike, cut and stab to, upon and against the body of him the said F. N. Bidleman, then and there being, with an intent him the said F. N. Bidleman wilfully, feloniously and of his malice aforethought to kill and murder.''

The position contended for by appellant is sustained by the decisions of the supreme court of California. (*People* v. *Congleton,* 44 Cal. 94; *People* v. *Murat,* 45 Cal. 282.) But it does not appear to us that the reasons therein given are sufficient to justify the conclusions reached.

Conceding it to be true that an indictment for an assault with a deadly weapon, with intent to inflict a bodily injury, should allege that the assault was made with a deadly weapon, or aver such facts as would enable the court to see that the weapon used was necessarily a deadly weapon (*People* v. *Jacobs,* 29 Cal. 579), still it does not necessarily follow that the conviction in this case should be set aside.

We are of opinion that the question of the sufficiency of the indictment must be tested and determined with reference to the crime charged. If the indictment is good for the crime of '' an assault with intent to kill,'' then, it seems to us, that it ought to be held sufficient to sustain a conviction of ''an assault with a deadly weapon, with intent to inflict a bodily injury,'' on the familiar principle that the graver charge includes the

less. (*State v. Robey*, 8 Nev. 312, and authorities there cited.)

The indictment, although it contains more words than are necessary, is substantially in the form prescribed by statute, and is sufficient as to the crime of an assault with intent to kill. (1 Comp. L. 1859.)

In such indictments it is not necessary to describe the particular manner in which the instrument is used, or to allege in direct terms that it is a deadly weapon. The means of effecting the criminal intent or the circumstances of evincing the design with which the assault was made are matters of evidence, and need not be set forth in the indictment. (*State v. Rigg*, 10 Nev. 288; *State v. Croft*, 15 Tex. 575; *Mayfield v. State*, 44 Tex. 60; *State v. Chandler*, 24 Mo. 372; *State v. Seward*, 42 Mo. 208.) The same rule is applied in indictments for murder. (*State v. Anderson*, 4 Nev. 273; *People v. Cronin*, 34 Cal. 200; *People v. Murphy*, 39 Cal. 55.) And for assault and battery, with intent to murder. (*State v. Dent*, 3 Gill and John. 10; *United States v. Herbert*, 5 Cranch, C. C. 90; *Harrison v. State*, 2 Cold. 233; *State v. Daley*, 41 Vt. 566.)

The ancient rules, relative to the strictness to be observed in the language of indictments, have been superseded by the wise and liberal provisions of our penal codes. The substance is preserved, but the rubbish is cast aside. It was intended by the adoption of the codes to remedy the evils that had so long existed under different rules. These evils were very clearly pointed out by an eminent English jurist. Sir Matthew Hale, speaking upon this question, said: "That in favor of life great strictnesses have been in all times required in points of indictments, and the truth is that it is grown to be a blemish and inconvenience in the law and the administration thereof; more offenders escape by the over-easy ear given to exceptions in indictments than by their own innocence, and many times gross murders, burglaries, robberies and other heinous and crying offenses escape by these unseemly niceties, to the reproach of the law, to the shame of the government, and to the encouragement of villainy, and to the dishonor of God. And it were very fit that by some law this overgrown curiosity

and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal, without some timely remedy." (2 Hale, P. C., 193.)

Upon this question, as well as others, courts should adhere to the true intent and spirit of the legislative enactments, and make their decisions, as far as is compatible with justice, conform to the common sense of mankind (which is the reason and soul of the law), especially " if they wish to secure for the law its ablest guardian—public respect."

Our statute provides that " in all cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment." (1 Comp. L. 2037.)

The defendant was, by the indictment, properly informed of the charge against him and of the particular means employed in committing it. He was accused of an assault with intent to kill, by striking, cutting and stabbing, one F. N. Bidleman with a knife. These acts necessarily charged a bodily injury, and, if the knife was a deadly weapon, which seems to be reasonably implied by the language used (*Dollarhide v. U. S.*, 1 Morris, 234; *People v. Lightner*, 49 Cal. 228), and was so found by the jury, then the offense of an assault with a deadly weapon is necessarily included in the indictment, although it omits to state some of the particular circumstances which characterize that degree of crime.

In *Keefe* v. *People*, the prisoner was convicted of murder in the second degree, and it was contended by his counsel that the conviction could not be sustained unless the indictment charged " that the death was effected while the accused was engaged in the commission of a felony, as specified in the statute, and that the absence of such an averment in the * * * indictment is fatal to the judgment."

Grover, J., in discussing the provisions of the statute of New York, which authorized the conviction for a lesser degree of the same crime, said:

" I think the true construction of the statute is that when the act for which the accused is indicted is the same act for which he is convicted, the conviction of a lower degree is proper, although the indictment contains averments constitut-

ing the offense of the highest degree of the species of crime, and omits to state the particular intent and circumstances characterizing a lower degree of the same crime. If this be the true construction, it follows that, under an indictment for murder in the first degree, the accused may be convicted of any degree of murder, or manslaughter, for the unlawful killing of the identical person charged, by the identical means charged, in the indictment. * * * In the present case the record shows that the person killed and the means of effecting the death, of which the defendant was convicted, were identical with the charge contained in the indictment, but that the killing was without a design to effect death, and therefore not murder in the first degree, but was done while the defendant was engaged in the commission of a felony, other than arson in the first degree, and therefore, under the statute of 1862, murder in the second degree. It is a general rule in criminal pleading, that when the act done is criminal only when done under a particular state of facts or circumstances, the existence of such facts and circumstances must be averred in the indictment; but the section of the statute under consideration has in effect provided that when the indictment is for a crime consisting of different degrees, and depending upon the intention of the accused and the circumstances under which the act was committed, and the indictment charges such act to have been committed with the intent, and under the circumstances constituting the highest degree of the crime, the defendant may be convicted of any lower degree, and consequently where there is a failure of proof of any part essential to a conviction of the higher degree, proof may be given of facts constituting a lower degree of the same crime, although the latter facts are not charged in the indictment, and the defendant may, upon such proof, be rightly convicted of the lower degree." (40 N. Y. 355–6.)

If there was any doubt as to whether the knife was a deadly weapon, it was a question for the court and jury to determine (*State* v. *Rigg, supra; State* v. *Davis*, 14 Nev. 413; *U. S.* v. *Small*, 2 Curtis 243); and this would be the result whether the language of the indictment did, or did not, necessarily convey the idea that the knife was a deadly weapon.

The questions to be determined were whether the assault was made by defendant, and if made, what was his intent? If it was not to kill, was it to inflict great bodily injury? If so, was the instrument used in making the assault a deadly weapon; if not, then he could only be convicted of an assault and battery, or simply assault, as the facts might justify. These questions are disposed of by the verdict which finds that the assault was made with a "deadly weapon," and this fact distinguishes this case from that of the *People* v. *Vanard*, 6 Cal. 562, and brings it within the rule we have announced.

The defendant in the indictment "is charged with the particular act of which he was convicted, but in a higher grade of crime. The particular act is found; the means employed in its perpetration are found as charged," but, instead of an intent to kill, "the jury find an intent to do bodily harm." (*State* v. *Robey, supra*.)

The only defect in the verdict is the omission of the words "with intent," after the word "weapon," and it is admitted that this omission will not vitiate the verdict, as these words are necessarily implied by the language used.

The judgment of the district court is affirmed.