JOHN DOLAN, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

A plea in abatement to an indictment is to be strictly construed; it must be drawn with precision and accuracy and must be certain to every intent.

A plea in abatement to an indictment found at a Court of General Sessions in the city of New York alleging that the annual grand jury list was not wholly selected, as required by statute (chap. 498, Laws of 1853), from the petit jury lists made out by the commissioner of jurors, without any averments of fraud or design, is not good. The fact that a few names not appearing on the petit jury lists are accidently put upon the grand jury list does not vitiate the whole list, and that it was by accident or oversight is to be presumed in the absence of allegations of fraud or design.

Nor is it a good plea that some one of the fifty selected as the special panel of grand jurors (§ 28, chap. 539, Laws of 1870) was not upon the petit jury lists, in the absence of an allegation that the persons actually sworn and impanneled were not upon that list. It is necessary also in such a plea to give the names of the persons alleged to have been selected and drawn who were not upon the petit jury lists.

It is not a good plea that the commissioner of jurors was prevented by duress from attending upon or supervising the grand jury. In the absence of allegations as to how the grand jury was drawn and by whom, it is to be presumed that the drawing was made by some other person claiming the office, acting as *de facto* commissioner, and recognized as such by all the officers having relations with him or his work; and a jury drawn by a *de facto* commissioner is regular.

An indictment setting forth a felony and then charging the killing of another by the accused while engaged in the commission thereof, is not void for duplicity. It charges but one offence, that of murder in the first degree, within one of the definitions of that offence in the act of 1873 (chapter 644, Laws of 1873), *i. e.*, the killing by a person while engaged in the commission of a felony.

Where one breaks into a dwelling-house burglariously with intent to steal, he is engaged in the commission of the crime until he leaves the building with his plunder; and if, while engaged in any of the acts immediately connected with his crime, he kills a person resisting him he is guilty of murder under said statute.

It is not necessary in an indictment charging the crime of murder under said provision to allege that the killing was "without any design to effect death;" an allegation that it was willful and felonious is proper and sufficient. The object of the words quoted is to dispense with proof of a design to effect death, not to require proof that there was no such design.

(Argued March 20, 1876; decided April 4, 1876.)

ERROR to the General Term of the Supreme Court in the first judicial department, affirming a judgment of the Court of Oyer and Terminer of the city and county of New York convicting plaintiff in error of the crime of murder in the first degree. (Reported below, 6 Hun, 232.)

The indictment contained four counts. The first count alleged, in substance, that the accused burglariously broke and entered the store of one James H. Noe, in the city of New York, with intent, feloniously and burglariously, to steal, take and carry away the goods of said Noe therein. That, while he was engaged in the commission of said burglary he assaulted and willfully and feloniously struck the said Noe upon the head with a piece of iron, inflicting a mortal wound of which he died, and so that he willfully and feloniously killed and murdered said Noe. The second count charged the killing while the accused was engaged in the crime of robbery from the person of said Noe. The third charged the killing with a deliberate and premeditated design to effect death. The fourth was a common-law count for murder.

The prisoner interposed a plea in abatement to the indictment to the effect that the pretended grand jury which found

the indictment " was not a grand jury of the county of New
York, because the list and annual panel of so called grand
jurors was not, as the law demanded, wholly selected from
the petit jury lists (made out by Douglas Taylor, commis-
sioner of jurors), when said grand jurors were selected by the
mayor, first judge of the Common Pleas, chief justice of the
Superior Court and city judge, at their annual meeting in
September, 1875, to select grand jurors for the county of
New York for the year then next ensuing. But said list
and alleged panel contained names of persons, as also the
alleged special panel of grand jurors for the said October
term of this court contains persons, who were not upon the
said petit jury list made out by Douglas Taylor, commis-
sioner of jurors. As well as for that Douglas Taylor who,
during the whole of the year A. D. 1875, was and now is
commissioner of jurors of the city and county of New York,
did not attend upon or supervise the drawing in September,
last past, of the alleged panel of grand jurors, which was by
the sheriff returned to this court for the October term thereof,
and from which panel was by this court sworn as pretended
and acting grand jurors the persons and the foreman who
presented, found, filed and signed the alleged indictment, as
aforesaid, against this defendant, although said Douglas Tay-
lor, commissioner of jurors aforesaid, was then and there
desirous of attending upon said drawing, but was by duress
prevented by the clerk of the county of New York from so
attending."

The district attorney demurred to the plea. The prisoner's
counsel joined in the demurrer and the plea was overruled.
The prisoner's counsel challenged the array of petit jurors
upon the same ground as in the case of *Dolan* v. *The People*
(*supra*). The district attorney demurred to the challenge
and the same was overruled.

*A. Oakey Hall* for the plaintiff in error. The indictment
upon which plaintiff in error was arraigned, tried and con-
victed was wholly invalid. (1 Bish. Cr. Proc. [2d ed.], §

738; *Rawles* v. *State*, 8 S. & M., 599; *State* v. *Williams*, 5 Porter, 130; *People* v. *Robinson*, 2 Park., 311.) The first count of the indictment, to which only the verdict attaches, does not legally support a conviction of murder in the first degree. (*Dauson's Case*, 25 N. Y., 402; 1 Crit. Cr. L., 231; Bish. on Cr. Proc. [2d ed.], 187, §§ 320, 321; *U. S.* v. *Davis*, 5 Mason, 356, 361; *Foster's Case*, 50 N. Y., 604, 609; Whar. on Hom., § 176.)

*Benj. K. Phelps*, district attorney, for the defendants in error. Mere irregularities in the discharge of duties imposed upon ministerial officers in the execution of the jury law, not operating in fact to the prejudice of the prisoner, furnish no ground for objection to proceedings against him. (*Friery's Case*, 2 Keyes, 452; *Ferris' Case*, 31 How. P., 140; *People* v. *Jewett*, 3 Wend., 321; 6 id., 388; *Stokes* v. *People*, 53 N. Y., 164; *Cohn* v. *Smith*, 9 Mass., 107; *State* v. *Brooks*, 9 Ala. [N. S.], 1.) The commissioner of jurors is neither required to select nor to attend the drawing of petit jurors. (Laws 1847, chap. 495, § 4; Laws of 1853, chap. 498, § 6; 2 Fay's Digest, 387.) The legality of the appointment of Dunlap could not be attacked in this collateral proceeding. (*Leech's Case*, 9 Howell's State Trials, 358; *People* v. *Collins*, 7 J. R., 549; *McInsley* v. *Tanner*, 9 id., 135; *Wilcox* v. *Smith*, 5 Wend., 231; *People* v. *Stevens*, 5 Hill, 616; *People* v. *Cook*, 8 N. Y., 67.) The Court of Oyer and Terminer, being of controlling criminal jurisdiction, had abundant authority to try this cause. (*People* v. *Guy*, 10 Wend., 509; *People* v. *Gen. Sess. of N. Y.*, 3 Barb., 144; *People* v. *Judges of Dutchess O. & T.*, 2 id., 282; *Quimbo Appo* v. *People*, 20 N. Y., 531; *People* v. *Myers*, 2 Hun, 6.) The first count of the indictment, although unnecessarily explicit, was not bad. (*People* v. *Allen*, 5 Den., 76; *Lohman* v. *People*, 1 Comst., 379.)

EARL, J. By the demurrer to the plea in abatement, the following facts must be deemed admitted: That the annual

panel of grand jurors for the year 1875 for the county of New York was not wholly selected from the petit jury lists made out by Douglas Taylor, commissioner of jurors, and that that panel, as well as the special panel of grand jurors drawn to serve at the term of court at which the defendant was indicted, contained the names of person who were not upon the petit jury lists made out by Taylor; that Taylor, who was commissioner of jurors, did not attend upon or supervise the drawing of the grand jurors who were summoned by the sheriff, and from whom the grand jurors who found the indictment were taken; and that he was prevented from attending such drawing, although desirous of so doing, by the duress of the county clerk. It is claimed, on behalf of the defendant, that these facts show that he was not properly indicted, and, therefore, that he was not properly convicted, and this presents the first question for our consideration. It will be useful to bring under review the various laws applicable to the city of New York relating to the selection and drawing of jurors, so that we may see the precise bearing of the defects alleged in the plea demurred to.

Under the Revised Statutes (2 R. S., 412, § 21) it was provided that in the city of New York each ward should be deemed a town for the purpose of returning petit jurors, and that the common council of the city should provide by ordinance the manner in which, and how often, such selection should be made, and the officers and persons by whom it should be conducted. A list of the jurors thus selected was required to be deposited with the county clerk, and he was required to draw thirty-six jurors to attend courts, in the presence of the county judge and sheriff. (§§ 24, 27, 29.) A certified list of the persons thus drawn was to be delivered to the sheriff, and he was to summon the persons thus drawn. In 1830, by chapter 24, section 4 of the laws of that year, the number of jurors to be drawn for any court was not exceeding eighty-four instead of thirty-six, and thus the law as to selecting and drawing petit jurors remained until 1847.

By the Revised Statutes (2 R. S., 720, § 2) it was provided

that the mayor, recorder and aldermen of the city of New York should meet in July in each year as a board of supervisors of that city and county, and should prepare a list of the names of 600 persons to serve as grand jurors at the different courts to be held in the city during the then ensuing year, and until new lists should be returned. The list was required to be returned to the county clerk. He was required to put the names into a box and draw therefrom, from time to time, in the presence of the sheriff, county judge or other officers named, twenty-four persons to serve as grand jurors (§ 10), and he was required to deliver a certified list of the names thus drawn to the sheriff, and he was required to summon them. By chapter 332 of the Laws of 1841, the number required to be drawn was changed to thirty-six, and thus the law remained until changed as mentioned below. In 1847 (chap. 495) it was provided that the list of petit jurors should be made by a person to be appointed by the supervisors of the city, the judges of the Supreme Court and the judges of the Court of Common Pleas, and known as the commissioner of jurors. He was required to make a list of all persons liable to perform jury duty, and return the same to the county clerk. The names thus returned were required by the county clerk to be placed in a box, and he was to draw the jurors, as before provided, to serve at the courts, and the persons thus drawn were to be summoned by the sheriff. In 1853 (chap. 498) it was provided that the persons to serve as grand jurors in the city of New York should be selected from the persons whose names are contained in the list of petit jurors, for the time being, for said city, by a board to consist of the mayor, presiding judge of the Supreme Court, chief justice of the Superior Court, the first judge of the Court of Common Pleas, the recorder and the city judge. They were required to meet annually at the office of the commissioner of jurors on the first Monday of September, and organize by the selection of one of their number as chairman, four of their number constituting a quorum. The commissioner of jurors was required to attend their meeting,

act as clerk, and produce to them all the lists of jurors in his possession. They were required to select from these lists a list of not less than 600, nor more than 1,000 persons, to serve as grand jurors in the city until the next list shall be prepared and the names deposited. The list thus selected was required to be certified by the officers making it, and filed in the office of the county clerk. The names upon the list thus made and filed were to be placed in a box by the county clerk, and he was to draw therefrom the names of the persons who were to serve at any court as grand jurors in the manner then provided by law, except that one or more judges of a court of record were required to be present at the drawing and certify the same. The number to be drawn was not changed, and they were to be certified to and summoned by the sheriff.

In 1870 (chap. 539) the law was again somewhat changed as to the powers and duties of the commissioner of jurors, and the selection and drawing of jurors. The commissioner of jurors was required to commence the preparation of lists of petit jurors in the month of May in each year, and insert therein the names of all persons possessing the qualifications mentioned in the law. The law as to filing the lists in the county clerk's office and drawing and summoning petit jurors was left unaltered; and the law as to the selection, certifying and filing of the annual list of not less than 600 nor more than 1,000 grand jurors was also left unaltered. Section 28 of that chapter, however, provides that "grand jurors shall be drawn and summoned in the same manner as petit jurors," and that "the ballots shall be prepared by the commissioner of jurors, and after being carefully compared with the lists regularly selected, shall be placed in the grand jury box. Unless the Court of Oyer and Terminer, or the Court of General Sessions, shall otherwise direct, the commissioner shall draw fifty grand jurors for each of said courts on the same day that petit jurors to be impanneled at the same time shall be drawn." This was the first law which authorized the commissioner of jurors to draw any jury. Before that

both petit and grand jurors were required to be drawn by the county clerk in the presence of the officers named. Such is still the law, except as to the grand jurors, and they are now required to be drawn by the commissioner at the county clerk's office, in the presence of the same officers as before required, and to be certified and summoned as before. Although fifty are required to be drawn and summoned, as a grand jury cannot be composed of more than twenty-three, nor less than sixteen persons, the court must select from those appearing the requisite number and excuse or discharge the rest. (2 R. S., 724.) The plea contains no allegation of any corruption, dishonesty or unfairness on the part of any of the officers in selecting and drawing the grand jurors, or of any design to injure the defendant or any other person, and it contains no allegation that any of the persons who were upon the grand jury which indicted the defendant did not possess the qualifications of grand jurors, or that any person was upon the jury who would not have been there if all the forms of law which are claimed to have been disregarded had been strictly complied with. It is not apparent how the alleged irregularities harmed the defendant, and it is certain that they had no relation whatever to the question of his guilt or innocence of the crime charged. Under such circumstances the indictment should be upheld, unless the facts pleaded point out some vital error. A plea in abatement is a dilatory plea, and it is a general rule that it must be strictly construed. The greatest accuracy and precision are required in framing it, and it must be certain to every intent. (1 Chit. Pl., 445, 458; 1 Bishop on Cr. Pro., § 324; *O'Connell* v. *Regina*, 11 Cl. and Fin., 155; *State* v. *Bryant*, 10 Yerger, 527; *State* v. *Newer*, 7 Blackf., 307; *State* v. *Brooks*, 9 Ala., 1; *Hardin* v. *State*, 22 Ind., 347.)

There is abundant answer to that portion of the plea alleging that the annual list of grand jurors was not wholly selected from the petit jury lists made out by Taylor as commissioner of jurors. It is not denied that the jurors were selected at the proper time and place. We must assume, as

there are no allegations to the contrary, that the board, composed of the mayor and other officers, met on the first Monday of September, 1875, at the office of the commissioner of jurors, and organized as required by law; that Taylor was there and produced to them all the petit jury lists then in his office, and that they selected mainly from such lists not less than 600 nor more than 1,000 persons who were qualified to serve as jurors. It is not alleged how persons came to be selected whose names were not upon the petit jury lists, nor how many were thus selected. It will answer the allegation of the plea to suppose that the number was not more than two or three. No authority can be found holding that in such a case the whole list is irregular and null, so that none of the persons on it could be drawn for grand jurors, because a few names, without fraud or design, were, as we may assume, by accident or oversight, also put upon it. From the list of names thus selected the law requires fifty to be drawn and summoned to attend a court. This precise number is fixed by the statute for no purpose of benefit or advantage to the persons who may be presented for indictment. The sole object of requiring this number is to secure the attendance at court of a sufficient number to constitute a grand jury. If more or less should be drawn no harm would be done any accused person, provided a sufficient number of qualified jurors were drawn and impanneled. No person who may be complained against before the grand jury can have any part in the selection from the fifty of those who are to constitute the grand jury. The duty of selection devolves upon the court. It may select a sufficient number and discharge the rest, and it may determine in its own way what mode shall be used to make the selection from the fifty, and for what reasons any of the fifty may be discharged or excused. Hence, the fact that some one of the fifty may not have been upon the petit jury list made by Taylor, so long as there is no complaint that all the persons actually sworn and impanneled were not upon that list, shows no error of which the defendant could take advantage by plea in abatement or

otherwise. (*Ferris* v. *The People*, 31 How. Pr., 140; *Friery's Case*, 2 Keyes, 424; *Vanhook* v. *State*, 12 Texas, 252.) Courts do not look with indulgence upon objections to irregularities in the mode of selecting or drawing grand jurors committed without fraud or design, which have not resulted in placing upon any panel disqualified jurors.

But the portion of the plea we are now considering is defective for another reason. It does not give the names of the persons who are alleged to have been selected and drawn, and who were not upon the petit jury lists. This is always required in a plea of abatement when defects of such a character are alleged. Suppose the plea had been that a number of the jurors actually impanneled were not qualified, or that they had not been sworn, a plea setting up such matters for the purpose of quashing the indictment would have to specify the names. In *O'Connell* v. *Regina* (*supra*) a plea in abatement that certain of the witnesses, upon whose evidence the indictment was found, were not sworn, was held bad upon general demurrer, among other reasons, because the names of the witnesses were not given in the plea. In this case the names should have been given, so that if the district attorney had chosen to join an issue of fact upon the plea he would have known precisely what allegations he would have to meet.

But a more serious allegation of error is the one that Taylor, who was commissioner of jurors, was prevented by duress from attending upon or supervising the drawing of the grand jury for the October term. But here again the allegations of the plea are very meager and deficient. It is admitted that the jury was drawn by some one. The county clerk may be assumed to have been present, as he was required to draw the petit jury at the same time, and probably, also, to certify the drawing of the grand jury. We must assume that the drawing was at his office; that the other officers required to be present were there; that the ballots were prepared, compared and deposited in the grand jury box by some one acting as commissioner of jurors, and claiming the right to act as such; that his action was recognized by the officers who witnessed

and were required to witness the drawing; that the jurors
drawn were certified to the sheriff by the proper officer, and
were summoned by him; that they appeared and were sworn,
impanneled and recognized by the court as the grand jury,
without any objection from any one. All these facts must be
assumed, as none of them are denied, some of them admitted
and all required by the statute. The plea does not disclose
how the jury was drawn, nor by whom. There is no allega-
tion in it that the drawing was not made by a person acting
and claiming the right to act as commissioner, and there is
no allegation that Taylor acted as such at any time. The
allegation as to him is simply that he was commissioner dur-
ing that year, which allegation is fully satisfied by construing
it to mean that he was, *de jure*, commissioner. Consistently
with that allegation, therefore, applying the rule of strict
construction applicable to such a plea, we may hold upon all
the facts above alluded to that some other person claimed the
office and was acting, at least, as a *de facto* commissioner,
and that he was recognized as such by all the officers who
had relations with him or his work. The maxim *omnia
præsumantur rite et solenetur esse acta donec probetur in
contrariam* may be invoked against the loose and uncertain
allegations of irregularity and error contained in the plea to
fortify the conclusion we have reached that the jury, if not
drawn by a *de jure* commissioner was, at least, drawn by a
*de facto* commissioner. A jury drawn by a *de facto* com-
missioner would be as regular as one drawn by a *de jure*
commissioner. (*Leech's Case*, 9 Howell's State Trials, 358;
*Wilcox* v. *Smith*, 5 Wend., 231; *People* v. *Cook*, 8 N. Y.,
67.) The case of *O'Connell* v. *Regina (supra)* shows how
strictly such pleas are construed. There the plea was that
the indictment was found upon the evidence of four witnesses,
and that the said witnesses were not sworn and the plea was
held bad, among other reasons, because there was no aver-
ment in the plea that the bill was not found upon the evidence
of other witnesses who were sworn besides those who were
alleged to have been examined without being sworn, and

because, also, the four witnesses might have been authorized by law to give their evidence upon affirmation instead of upon oath. So there is no averment in this plea that the jury was not drawn by some one who was acting, and claiming the right to act, as commissioner of jurors. In *Leech's Case*, a plea in abatement that the grand jurors were returned by two persons, naming them, who were not sheriffs, was held bad, because the court might infer that the persons named acted as *de facto* sheriffs and were recognized as such. We therefore conclude that the demurrer to the plea was properly sustained.

It is claimed that the defendant could not be convicted of murder in the first degree under the first count, on the ground that that count was void for duplicity in setting up two distinct offences, a burglary and a homicide in some degree. That count first describes a burglary in the third degree in form so as to show that a complete offence was committed, and then charges that the defendant, while engaged in the commission of the burglary, committed the murder charged. There was but one offence charged, that of killing while engaged in the commission of a felony. (Laws of 1873, chap. 644.) An indictment under that provision of the statute must describe the felony and state, substantially, facts showing that the accused was engaged in the commission thereof. It certainly can do no harm to the accused, and could not mislead him as to the charge he was called upon to answer, that the offence was described more fully or minutely than necessary. It is obvious that only one offence was designed to be charged in the count, and no one could read it without knowing that the charge was murder while engaged in the commission of the felony described.

It is further claimed that the first count is defective in charging that the killing was committed after the complete offence of burglary had been committed, and not while the accused was engaged in the commission of the burglary. The count does not bear this construction. It describes a complete burglary and then alleges that the accused committed

the murder while engaged in the burglary, not after he had committed it. If a burglar break into a dwelling-house burglariously, with the intent to steal, the offence is doubtless complete before he leaves the building, but he may be said to be engaged in the commission of the crime until he leaves the building with his plunder ; and if, while there engaged in securing his plunder, or in any of the acts immediately connected with his crime, he kills any one resisting him, he is guilty of murder under the statute.

Murder in the first degree is described in the act of 1873 as follows : " First. When perpetrated from a deliberate and premeditated design to effect the death of the person killed, or of any human being. Second. When perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. Third. When perpetrated without any design to effect death by a person engaged in the commission of any felony." It is further claimed that this count is defective, because it was not alleged therein that the killing was " without any design to effect death," the allegation on the contrary being that the killing was " willful and felonious." It is undoubted law that an indictment upon a statute must state all the facts and circumstances which constitute the statute offence, so as to bring the accused perfectly within the provisions of the statute, but it need not contain the words of the statute. It is generally sufficient if it contain the substance and effect of them. (*People* v. *Allen*, 5 Denio, 76 ; 1 Bish. on Cr. Pro., § 612.)

The Revised Statutes (2 R. S., 546, § 5) contained the same definition of murder as that of murder in the first degree under the statute of 1873, except in the first division of section 5, in the Revised Statutes, the word " deliberate," before "premeditated," was omitted. In 1860 (chapter 410), murder in the first degree was described as follows : " All murder which shall be perpetrated by means of poison or by lying in wait, or by any other kind of willful, deliberate and

premeditated killing, or which shall be committed in the perpetration or the attempt to perpetrate any arson, rape, robbery or burglary, or in any attempt to escape from imprisonment, shall be deemed ' murder of the first degree.' " In 1862 (chapter 197), the definition of murder as contained in the Revised Statutes, was applied to murder in the first degree, except that the third subdivision of section 5 was altered to read as follows: " When perpetrated in committing the crime of arson in the first degree."

Under the first subdivision of section 5, in order to constitute murder in the first degree, the killing must have been from deliberate and premeditated design. The object of the third subdivision was clearly in contrast with the first, to make any killing while engaged in the commission of a felony, murder in the same degree, although there was no design to effect death. The sole purpose of the words, " without any design to effect death," was to dispense with proof of any design. It cannot be supposed that the legislature meant to require proof in such a case that the killing was absolutely without any design to effect death, and in case of such proof to make it murder in the first degree, whereas, in case of proof of design to effect death, it meant to make it a homicide in a lower degree. Under the statutes of 1860 and 1862 the particular felonies were described in the commission of which killing would be murder, and under those statutes the killing, with or without design, was murder in the first degree. The only change sought to be effected by the statute of 1873, was to remove the limitation as to the specified felonies, and . to make killing murder in the first degree, if done while engaged in the commission of any felony. It would be quite absurd so to construe the statute as to enable a person charged with murder, under the third subdivision of section 5, to establish a defence by proving that he designed the murder. We are, therefore, of opinion that the first count of the indictment fully describes the offence of murder in the first degree by alleging in proper words that the defendant, willfully and feloniously, killed

Noe while he was engaged in the commission of the felony of burglary.

We have thus, with the care the importance of this case requires, considered and disposed of all the questions which were orally discussed before us. We have also carefully considered all the allegations of error contained in a printed brief submitted to us, and it is sufficient to say of them that they are clearly without foundation, and were sufficiently considered and properly disposed of in the opinions in the Supreme Court.

The judgment must be affirmed.

All concur.

Judgment affirmed.