Price, J.
(dissenting). As I can not agree with the majority in this case, it is proper that some of the reasons for my dissent be placed on record. Our difference is one of degree, for it is my judgment, that accepting as true all the state claims the evidence establishes or tends to establish, and taking the facts as stated in the majority opinion, the crime of Conrad was not beyond murder in the second degree.
However, there is one controlling fact omitted from the statement of the case, although it is found in the body of the opinion. That fact is, that neither Conrad nor his companion took property of any kind from the building broken and entered, and Conrad was not in possession of any booty taken therefrom when the killing of Davis occurred, nor was he attempting to carry away anything from the house at the time. It is conceded that neither he nor his companion had time or opportunity to steal anything while inside. This fact clearly distinguishes this case from several cases cited and relied on by the majority.
The indictment of Conrad is based on the provisions of Section 6808, Revised Statutes, and as it is the comment text for all of us in this discussion, and does not appear elsewhere in the record, it is copied here, as follows: “Whoever purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery or burglary, kills another, is guilty of murder in the first degree and shall be punished by death, unless the jury trying the accused recommend mercy, in which case the punishment shall be *80 imprisonment in the penitentiary during life.” + * *
Therefore, when Conrad plead guilty to the charge of violating this section, or, using the language of Section 7316, Revised Statutes, was “convicted by confession in open court,” it' became the duty of the court to “examine the witnesses and determine the degree of crime and pronounce sentence accordingly.”
I am thoroughly persuaded that the degree determined by the court and on which sentence of death was pronounced is excessive, and that no case has been made by the -state to justify that degree of homicide. No case has been cited, and the most careful search has failed to find any case containing anything like similar facts to these, which sustains or even encourages the sentence pronounced in this case.
Did Conrad take the life of Davis while perpetrating or attempting to perpetrate the burglary described? Was he still committing burglary when Davis was shot- on the vacant lot twenty-five or thirty feet from the residence burglarized; a lot not owned by the owner of such residence? If the pursuit of Conrad had continued for a mile in the city and thence to the country and another county, would the burglary follow such effort to escape? And would the killing of the pursuing officer thus distant from the scene of the burglary, be a killing in the perpetration of a burglary? If not, he could not be legally adjudged guilty of murder in the first degree under the present indictment, although he did kill Davis while resisting arrest. The latter is not the charge made against the accused. The reiidence *81 was unoccupied at the time, and it is not claimed that there was any evidence tending to show a conspiracy to kill any one in case of flight or pursuit. Such purpose was denied by the accused. Having secured no booty or plunder, 'it was perfectly legitimate for the burglars to abandon their purpose and leave the premises.- It was their duty to do so, for they were criminal trespassers. This does not mean that they had a right to resist and kill an officer who was trying to prevent their escape, but that they had completed the burglary and the subsequent killing away from the building was no part of it. Their efforts to retreat from the premises, they having no booty taken from the residence, were not res gestae of the burglary, and therefore the killing of Davis during their flight was not res gestae of the burglary. To use a homely illustration, the majority put the cart before the horse.
If the statute made it burglary to break out of such building, and the accused took life in so doing, or in trying to escape, the doctrine that the - killing was res gestae of such a burglary might apply. But the killing in this case was not res gestae of the burglary as charged in the indictment. This view is entirely consistent with every case cited in the majority opinion. Let us see if this is not true.
In the case of Bissot v. State, 53 Ind., 409, it appears that the killing was done after the house had been broken and entered, and while the burglar and the person killed — a watchman— were both in the house. Under such circumstances that court held the killing to be res gestae of the burglary.
*82 United States v. Hartwell, 73 U. S., 385, is also cited. There the court was considering the construction of a federal statute in a case of embezzlement, and it became important to know what persons came within the provisions of the federal statute, and the principle stated in the third branch of the syllabus is: “The admitted rule that penal statutes are to be strictly construed is not violated by. allowing these words to have full meaning, or even the more extended of two meanings, where such construction best harmonizes with the context, and most fully promotes the policy and objects of the Legislature.” I commend to the majority the reading of the opinion where the above principle is discussed, as found on pages 395-6.
The illustration found in the opinion and assumed to be taken from Commonwealth v. Eagan, 190 Pa. St., 10, fails to fortify the position of the majority. The purport of that case is, that where confederates, intending to break and enter a dwelling for a felonious purpose, and while watching the same, saw the owner come out of the house and cross the road to his barn, and they followed him with intent to- overcome and disable him, and did assault him, from which assault he died, and they then returned to the yard with intent to break into the house, but were frightened away by the approach of a team, such acts done in the execution of an admitted intent, were sufficiently approximate to the attempt to burglarize, that the court should submit to the jury the question of an attempt at burglary as well as robbery. In commenting on that case, the majority opinion submits the following: “Let us *83 suppose a case. Two confederates, intending to break and enter a dwelling for a felonious purpose, are met by the owner at the door or window which they are forcing, and they kill him. Would anybody question that such a killing was in the perpetration of a burglary? Surely not.” Yes, I would question it, and further add, that the killing in the supposed case occurred in an attempt to perpetrate a burglary, which was one of the questions submitted to the jury in Commonweath v. Eagan, supra. Our statute would cover such a supposed case as an attempt to perpetrate a burglary.
But there is more to be said of that case. The court say on page 21: “It is beyond dispute that there was an intent to commit burglary, but that it was not carried to completion. The question is, did it stop at the mere intent, or did it amount to an attempt?” The court then discusses the connection the overt acts have with the intent. There were acts of violence in either attempting to rob the owner at the barn, or disable him so they might break into his dwelling. A consideration of the whole case and the points at issue and decided, will show it without value here, except as a mere sidelight. This will more fully appear by the language of that court on page 22.
The case of Dolan v. People, 64 N. Y., 485, is also cited. It deals almost entirely with questions of criminal practice and pleading under the statutes of that state, and contains no statement of the facts attending the commission of the crime charged. The only thing found in it pertinent to our subject is a paragraph of the syllabus, on page 486, to-wit: “Where one breaks into a dwell *84 ing-house burglariously with intent to steal, he is engaged in the commission of the crime until he leaves the building with the plunder; and if, while engaged in any of the acts immediately connected with the crime, he kills a person resisting him, he is guilty of murder under the statute.” It is a fair inference from the statement, that the killing in that case occurred while in the building or while the burglar was leaving it with his plunder. But suppose the burglar had left the building without hurting any one and took no plunder, would the burglary continue indefinitely after-wards ?
Nor does the pawnshop case (State v. Brown, 7 Ore., 186) come any nearer to the one at bar. The very quotation from it which appears in the majority opinion proves this statement. The doctrine there stated is, that “the taking of goods to constitute robbery, is not necessarily concluded so as to complete the crime by the removal of the goods beyond the presence of the owner, and to constitute a killing during a robbery, it is not necessary that the killing should be determined at the precise place and time of the act of violence.” There the persons entered the store, disabled the owner, took the contents of the safe and with them proceeded up street. Being pursued, they fired at the pursuer and killed a bystander. The robbery was still on, because the possession of the stolen goods continued the robbery to the street.
It has been decided by this court, that a person bringing property into this state which he had stolen in another state may be convicted here of larceny (Hamilton v. State, 11 Ohio, 435; Stan *85 ley v. State, 24 Ohio St., 168). The continued possession of the stolen goods in our state makes it larceny here, is the spirit of the decisions.
We next come to the California case (The People v. Vasques, 49 Cal., 560). The third paragraph of the syllabus states all that can be claimed as bearing on this controversy. It reads: “If several are associated together in the commission of a robbery, and one of the associates does not intend to take life and prohibits the others from taking life, yet, if one of his associates takes life while they are engaged in the robbery, and in furtherance of the common purpose to rob, he is as much guilty of murder in the first degree as though his own hand had given the fatal blow.”
That doctrine is as old as the criminal law itself, and is the same doctrine laid down in Stephens v. State, 42 Ohio St., 150, cited in the opinion. So also with the Loveland case, decided recently by this court and referred to in the opinion. He was one of three conspirators to rob Geyer in his home. He may not have contemplated homicide in doing so — he may have forbidden it when the conspiracy was formed. But he took the part assigned to him and was watchman in the highway for those who entered the house. Burglary and robbery both were in contemplation to obtain Geyer’s money. In law he was present at the robbery and the killing, and was held liable for murder. This concludes a brief review of all the cases cited in support of the majority opinion.
But why quibble and halt in the face of the plain language of our statute? There is not a technical word in it, and all we need to do, is, give *86 the construction that other plain language receives at the hands of the court. We are dealing with a penal statute, and such statutes must be construed strictly, and can not be extended by implication to cover cases not strictly within their terms. So held in Hall v. State, 20 Ohio, 8; Shultz v. Cambridge, 38 Ohio St., 659; White v. Woodward et al., 44 Ohio St., 347.
I fear that the decision of the majority in this case smacks of judicial legislation. For these reasons I think the sentence pronounced should be set aside and the case remanded for re-sentence according to the facts and the law.